IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| MITCHELL LUDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHAWN EMMONS, Warden; DEANNE MORRIS, Health Service Administrator, Ga. Regent Health System; CHERIE PRICE, Deputy Warden; MITZI HALL, Director of Nursing, Ga. Regent Health System, WESLEY O'NEAL, Unit Manager; MS. BYRD, Correctional Officer; MS. PULLINS, Nurse; JASON HURST, Cert. Officer; LARRY TIMMONS, Cert. Officer; LAKEISHA SMITH, Cert. Officer; JAMIE CLARK, Deputy Warden Administration; MS. CLAXTON, Nurse; MS. ROGERS, Nurse; MR. BRYAN JR., Nurse; and JOHN and JANE DOES, Doctors,[1] | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CV 316-065 |
| | ) | |
| Defendants. | ) | |

_____

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

*Pro se* Plaintiff, formerly incarcerated at Johnson State Prison ("JSP") in Wrightsville, Georgia, filed the above-captioned case pursuant to 42 U.S.C. § 1983. The Court **GRANTS** Plaintiff's motion for leave to file an amended complaint. (Doc. no. 20.) Because he is proceeding IFP, Plaintiff's amended complaint (doc. no. 22) must be screened

---

[1]The Court **DIRECTS** the Clerk to update the docket in accordance with the caption on this Order.

to protect potential defendants.  Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

## I.   SCREENING OF THE COMPLAINT

### A.   BACKGROUND

Plaintiff names as Defendants (1) Shawn Emmons, Warden at JSP; (2) DeAnne Morris, Health Services Administrator for the Georgia Regents Health System ("GRHS"); (3) Cherie Price, Deputy Warden at JSP; (4) Mitzi Hall, Director of Nursing for GRHS; (5) Wesley O'Neal, Unit Manager at JSP; (6) Ms. Byrd, Correctional Officer at JSP; (7) Ms. Pullins, Nurse for GRHS; (8) Jason Hurst, Cert. Officer at JSP; (9) Larry Timmons, Cert. Officer at JSP; (10) Lakeisha Smith, Cert. Officer at JSP; (11) Jamie Clark, Deputy Warden of Administration at JSP; (12) Ms. Claxton, Nurse for GRHS; (13) Ms. Rogers, Nurse for GRHS; (14) Mr. Bryan, Jr., Nurse for GRHS; and (15) John and Jane Does, Doctors for GRHS.  (See doc. no. 22, pp. 1, 7-9.).  Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On September 29, 2015, Plaintiff was given the following medical profile by the Physician's Assistant ("PA") at JSP: no chemicals, fumes or dust, may wear own ortho shoes, climate control dorm, CPAP machine, bottom bunk, Ted hose, soft shoes, shoe inserts, and heat intolerance. (Id. at 11.)  Despite this designation, Defendant Price had Defendant Morris discontinue Plaintiff's assisted living profile and move him to a non-assisted living dorm at JSP. (Id.)  Plaintiff was forced to share a cell with an inmate who constantly smoked marijuana and cigarettes. (Id. at 12.)  Plaintiff complained to Defendant Emmons and filed grievances against Defendants Price and Morris about his situation, but to no avail.  (Id.)

Because of this exposure to excessive dust, lint, and smoke, Plaintiff experienced an increased risk of an asthma attack. (Id. at 11.)

On October 30, 2015, Defendant Price removed Plaintiff from his barbering detail in retaliation for his filing grievances against her. (Id. at 12.) Although this removal was purportedly due to Plaintiff's potential reaction to chemicals used in the barbershop, Counselor Lindi Humpheries told Plaintiff "somebody in the administration doesn't want the Plaintiff back in the Barber Shop." (Id.)

On November 19, 2015, Defendant O'Neal took away Plaintiff's clear plastic container used to store his CPAP breathing machine as part of a security shakedown. (Id. at 13.) Despite filing a grievance, Defendant O'Neal refused to return the container. (Id.) As a result, Plaintiff's machine has been infected by dust, bacteria, vermin, environmental tobacco smoke, and insects, and caused Plaintiff to suffer from wheezing, coughing, headaches, dizziness, nausea, vomiting, breathing difficulty, and sleeping problems. (Id.)

On April 28, 2016, PA Lindsey of JSP prescribed nebulizer treatments for Plaintiff's asthma. (Id. at 14.) However, on numerous occasions over the next several months, Defendant Pullins refused to call Plaintiff to the medical department to receive those treatments. (Id.) Plaintiff complained to Defendants Hall and John Doe Doctor, but nothing was done. (Id.) Furthermore, Defendant Byrd refused to turn on the exhaust fans in Plaintiff's dorm and threrfore no air circulated in the building. (Id.) As a result of these Defendants actions, Plaintiff's suffered two asthma attacks in the middle of the night on June 11, 2016, and June 13, 2016. (Id.)

On June 28, 2016, Defendants Hurst, Timmons, and Smith strip-searched Plaintiff on

suspicion that he had a cell phone in his possession. (Id. at 15.) Defendants removed Plaintiff to continue their shakedown of his cell. (Id.) During the shakedown, Defendants removed and threw away Plaintiff's inhaler. (Id. at 16.) Plaintiff had to obtain an emergency inhaler from the medical department as a replacement. (Id.) Defendants then handcuffed Plaintiff and placed him in a J-1 security unit without a disciplinary report, which exposed him to extremely high temperatures that could have triggered his asthma. (Id. at 15.) Furthermore, Plaintiff informed these Defendants, along with Defendant Clark, of his need for an extension cord for his CPAP machine, but they refused to provide him with one. (Id. at 16.) However, eight days later, Plaintiff was given back his inhalers and provided an electrical extension cord. (Id. at 17.)

As a result of all named Defendants' actions, Plaintiff's asthma exacerbated to such a degree he had to be taken to the Fairview Park Hospital emergency room for hyperventilating and cardiac palpitations. (Id.)

### B. DISCUSSION

#### 1. Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."

Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

## 2. Plaintiff Fails to State a Claim under the ADA

Title II of the ADA prohibits discrimination in services, programs, or activities of a "public entity" or "discrimination by any such entity." 43 U.S.C. § 12132. The ADA defines a "public entity" as:

> (A) any State or local government;
>
> (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and
>
> (C) the National Railroad Passenger Corporation, and any commuter authority.

Thus, "public entities" under Title II of the ADA include state governments that operate state correctional facilities. United States v. Georgia, 546 U.S. 151, 154 (2006). However, the above definition clearly does not include individuals. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1172 (11th Cir. 2003); see also C.S. v. Thomas, No. 514-CV-01022-AKK-JEO, 2016 WL 2605531, at *4 (N.D. Ala. Apr. 8, 2016), *report and recommendation adopted*, No. 514-CV-01022-AKK-JEO, 2016 WL 1746015 (N.D. Ala. May 3, 2016) (citing Badillo v. Thorpe, 158 F. App'x 208, 211 (11th Cir. 2005)) ("The ADA and the Rehabilitation Act do not provide for individual liability. . . ."). Therefore, as Plaintiff only names individuals responsible for ADA violations, his claim fails.

## 3. Plaintiff Fails to State a Claim Against Defendants Emmons and Hall.

Plaintiff has failed to state a viable § 1983 claim against Defendants Emmons and Hall because he is attempting to hold them liable merely because of their supervisory positions. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell,

193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Florida Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013).  Likewise, supervisors, employers, and private contractors cannot be sued under § 1983 simply on a theory of *respondeat superior*.  See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted).  Therefore, to hold Defendants Emmons and Hall liable, Plaintiff must demonstrate either (1) Defendants actually participated in the alleged constitutional violation, or (2) there is a causal connection between Defendants' actions and the alleged constitutional violation.  See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).  Here, Plaintiff does not show any actual participation in the alleged constitutional violation by these Defendants.  He only alleges he complained to them, but they did nothing.  (Doc. no. 22, pp. 12-14.)

Likewise, Plaintiff must allege a causal connection between Defendants Emmons and Hall and the asserted constitutional violations.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).  The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the

7

alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)).  The standard for demonstrating "widespread abuse" is high.  In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Here, Plaintiff fails to draw the necessary causal connection to any alleged constitutional violation.  Plaintiff's general discussion of Defendant Emmons and Hall knowledge of his issues getting asthma treatment and failure to respond, (doc. no. 22, pp. 12-14), falls woefully short of the specificity required to draw the requisite causal connection to sustain a claim for supervisory liability.  Therefore, Plaintiff fails to state a claim upon which relief can be granted against Defendants Emmons and Hall, and they should be dismissed from the case.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's ADA and supervisory liability claims be **DISMISSED**.  As no claims remain against them, the Court further **REPORTS** and **RECOMMENDS** Defendants Emmons and Hall be

**DISMISSED** from this case.  In a companion Order, the Court has allowed Plaintiff's claim for retaliatory punishment for filing grievances against Defendant Price and deliberate indifference to his asthma against Defendants Morris, Price, O'Neal, Byrd, Pullins, Hurst, Timmons, Smith, Clark, Claxton, Rogers, Bryan, Jr., and Doctors John and Jane Does to proceed.

SO REPORTED and RECOMMENDED this 20th day of March, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA