IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| MITCHELL LUDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DEANNE MORRIS, Health Service ) | |
| Administrator, Ga. Regent Health System; ) | |
| CHERIE PRICE, Deputy Warden; WESLEY ) | |
| O'NEAL, Unit Manager; JESSICA BYRD, ) | CV 316-065 |
| Correctional Officer; CONSTANCE ) | |
| PULLINS, Nurse; JASON HURST, Cert. ) | |
| Officer; LARRY TIMMONS, Cert. Officer; ) | |
| LAKEISHA SMITH, Cert. Officer; JAMIE ) | |
| CLARK, Deputy Warden Administration; ) | |
| ANGIE CLAXTON, Nurse; PEARLENE ) | |
| ROGERS, Nurse; WALT BRYAN, Nurse; ) | |
| PAMELA LINDSEY, Nurse Practitioner; and ) | |
| ANNIE ANDREW-BODI, Physician ) | |
| Assistant, ) | |
| ) | |
| Defendants. ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Calhoun State Prison in Morgan, Georgia, brought this case pursuant to 42 U.S.C. § 1983 regarding events alleged to have occurred at Johnson State Prison ("JSP") in Wrightsville, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis*. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' partial motions to dismiss (doc. nos. 49, 64) be **GRANTED**.

**I.    BACKGROUND**

With respect to the remaining Defendants in this action, Plaintiff alleges the following facts.

On September 29, 2015, the Physician's Assistant ("PA") at JSP gave Plaintiff the following medical profile by: no chemicals, fumes or dust, may wear own ortho shoes, climate control dorm, CPAP machine, bottom bunk, Ted hose, soft shoes, shoe inserts, and heat intolerance. (Doc. no. 22, p. 11.) Despite this designation, Defendant Price ordered Defendant Morris to discontinue Plaintiff's assisted living profile and move him to a non-assisted living dorm at JSP. (Id.) Plaintiff was forced to share a cell with an inmate who constantly smoked marijuana and cigarettes. (Id. at 12.) Plaintiff filed grievances against Defendants Price and Morris about his situation, but to no avail. (Id.) Because of this exposure to excessive dust, lint, and smoke, Plaintiff experienced an increased risk of an asthma attack. (Id. at 11.)

On October 30, 2015, Defendant Price removed Plaintiff from his barbering detail in retaliation for filing grievances against her. (Id. at 12.) Although this removal was purportedly due to Plaintiff's potential reaction to chemicals used in the barbershop, Counselor Lindi Humpheries told Plaintiff "somebody in the administration doesn't want the Plaintiff back in the Barber Shop." (Id.)

On November 19, 2015, Defendant O'Neal took away Plaintiff's clear plastic container used to store his CPAP breathing machine as part of a security shakedown. (Id. at 13.) Despite filing a grievance, Defendant O'Neal refused to return the container. (Id.) As a result, Plaintiff's machine has been infected by dust, bacteria, vermin, environmental tobacco smoke, and insects, and caused Plaintiff to suffer from wheezing, coughing, headaches, dizziness, nausea, vomiting,

2

breathing difficulty, and sleeping problems. (Id.)

On April 28, 2016, Defendant Lindsey prescribed nebulizer treatments for Plaintiff's asthma. (Id. at 14.) However, on numerous occasions over the next several months, Defendant Pullins refused to call Plaintiff to the medical department to receive those treatments. (Id.) On one particular occasion, Defendant Byrd as well as Defendant Pullins refused to call Plaintiff to medical for treatment. (Id.) Plaintiff complained to Defendants Lindsey and Andrew-Bodie, but nothing was done. (Id.) Furthermore, Defendant Byrd refused to turn on the exhaust fans in Plaintiff's dorm and therefore no air circulated in the building. (Id.) As a result of these actions, Plaintiff suffered two asthma attacks in the middle of the night on June 11, 2016, and June 13, 2016. (Id.)

On June 28, 2016, Defendants Hurst, Timmons, and Smith strip-searched Plaintiff on suspicion that he had a cell phone in his possession. (Id. at 15.) Defendants removed Plaintiff to continue their shakedown of his cell. (Id.) During the shakedown, Defendants removed and threw away Plaintiff's inhaler. (Id. at 16.) Plaintiff had to obtain an emergency inhaler from the medical department as a replacement. (Id.) Defendants then handcuffed Plaintiff and placed him in a J-1 security unit without a disciplinary report, which exposed him to extremely high temperatures that could have triggered his asthma. (Id. at 15.) Furthermore, Plaintiff informed these Defendants, along with Defendant Clark, of his need for an extension cord for his CPAP machine, but they refused to provide him with one. (Id. at 16.) However, eight days later, Plaintiff was given back his inhalers and provided an electrical extension cord. (Id. at 17.)

As a result of all named Defendants' actions, Plaintiff's asthma exacerbated to such a

degree he had to be taken to the Fairview Park Hospital emergency room for hyperventilating and cardiac palpitations. (Id.)

Plaintiff filed twelve grievances during the time period from September 29, 2015, through the commencement of this case. (Doc. no. 49-4, Attch. 2; doc. no. 49-5, Attch. 3.) Four of these grievances were unrelated to Plaintiff's claims in this action. In grievance 214266, Plaintiff claimed he was denied privileges associated with his religion. (Doc. no. 19-5, Attch. 3, pp. 20-29.) In grievances 216943 and 226723, Plaintiff claimed he was refused orthopedic shoes and corresponding inserts. (Id. at 30-46.) In grievance 226723, Plaintiff complained about problems with the JSP business office. (Id. at 99-105.)

Eight of Plaintiff's grievances arguably relate to his allegations in this lawsuit. Defendants concede Plaintiff properly exhausted his administrative remedies in grievances 206899, 208303, and 219079 with respect to Plaintiff's claims against Defendants Price and Morris for discontinuance of his assisted living profile, Defendant O'Neal for confiscating his CPAP container, and Defendant Byrd for refusing to call Plaintiff to medical for breathing treatments. (See doc. no. 49-1, pp. 9-10.) Thus, five of Plaintiff's grievances remain at issue.

Plaintiff filed grievance 208440 on November 24, 2015, alleging Counselor Humphries was not allowing him his on the job training barbering hours. (Doc. no. 49-5, Attch. 3, pp. 17-19.) Plaintiff dropped this grievance on December 2, 2015. (Id.)

Plaintiff filed emergency grievance 219596 on May 24, 2016, alleging Ms. Hall refused to give him breathing treatments and Defendant Pullins falsified his vital information. (Id. at 57-65.) On June 29, 2016, Deputy Warden Price evaluated and denied

4

grievance 219596 on the ground it was not an emergency. (Id.) On October 7, 2016, the grievance process ended when the Central Office failed to respond to Plaintiff's appeal within 100 days. (Id.)

Plaintiff filed grievance 222517 on July 8, 2016, alleging Defendants O'Neal, Bryan, Pullins, and other prison officials refused to provide him with an electrical cord for his CPAP machine. (Id. at 66-83.) On August 16, 2016, Deputy Warden Price evaluated and denied grievance 222517 on the ground Plaintiff had been provided an electrical cord and the issue resolved. (Id.) On October 12, 2016, the Central Office denied Plaintiff's appeal. (Id.)

Plaintiff filed grievance 223177 on July 18, 2016, alleging JSP doctors, medical department, warden, and deputy warden have ignored his heat intolerance medical profile and subjected him to conditions that aggravate his asthma and atrial fibrillation. (Id. at 84-92.) On July 19, 2016, Deputy Warden Price evaluated and denied grievance 223177 on the ground housing should not be addressed through the grievance process. (Id.) On October 12, 2016, the Central Office denied Plaintiff's appeal. (Id.)

Plaintiff filed grievance 225673 on August 18, 2016, complaining generally about exposure to environmental tobacco, marijuana, and methamphetamine smoke at JSP aggravating his asthma, atrial fibrillation, and sleep apnea. (Id. at 93-98.) On September 14, 2016, Deputy Warden Price evaluated and denied grievance 225673 on the ground it contained more than one issue. (Id.) On January 27, 2017, the Central Office denied Plaintiff's appeal. (Id.)

## II. DEFENDANTS' PARTIAL MOTIONS TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

### A. The Legal Framework

Where, as here, Defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the Court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, Defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 555 U.S. 1074 (2008)).

If the complaint is not subject to dismissal at the first step, then at step two the Court makes specific findings to resolve the disputed factual issues, with Defendant bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the Court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

6

any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1]  Finally, under the

---

[1]Other federal circuits have similarly held the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Lee v. Lappin, No. 04-5008, 2004 WL 1701045 (D.C. Cir. July 29, 2004); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

### B. The Administrative Grievance Procedure

Based on the dates of the alleged incidents, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001, which became effective on July 20, 2015. (See doc. no. 49-3, Attch. 1.) The administrative remedies procedure commences with the filing of a grievance with the inmate's counselor. SOP IIB05-0001 § VI(D)(1)-(3). The inmate's counselor forwards the grievance to the grievance coordinator, who must screen the grievance to determine whether to accept it or recommend the Warden reject it. Id. § VI(D)(3), (5)(a). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § VI(D)(4). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(D)(5)(b)(2). Should the grievance coordinator recommend rejection, the SOP requires the Warden give a response to the inmate's counselor to deliver to the inmate within forty calendar days of its original receipt; a onetime ten calendar day extension may be granted. Id. § VI(D)(7).

If the inmate is not satisfied with the Warden's response to the grievance, he has seven calendar days from the receipt of the response to file an appeal to the Central Office of

the Commissioner; the Office of the Commissioner or his designee has one hundred calendar days after receipt of the grievance appeal to respond. Id. § VI(E)(2), (7). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office or the expiration of the one hundred day time period. See id. § VI(E).

A prisoner may also file an emergency grievance regarding an unexpected situation resulting in a significant threat to the health, safety, or welfare of that prisoner. Id. § IV(A). Emergency must immediately be referred to the Grievance Coordinator or Duty Officer, if after hours, and the Coordinator or Officer must provide an initial response within forty-eight hours. Id. § VI(F)(1)-(2). If the Coordinator or Officer determines the grievance does not qualify as an emergency grievance, the prisoner may file the grievance as a regular grievance following the procedure outlined above within seven calendar days of the Coordinator's or Officer's decision. Id. § VI(F)(3).

### C. Plaintiff Failed to Exhaust the Majority of His Claims.

Here, the majority of Plaintiff's claims should be dismissed because Defendants have met their burden of proving Plaintiff failed to exhaust the grievance process as to grievances 200646, 208440, 219596, 222517, 223177, 225673, and his claim that Defendant Byrd turned off exhaust fans on JSP's roof.

#### 1. Grievance 200646

Plaintiff claims grievance 200646, filed on July 27, 2015, exhausts his claim against Defendant Timmons for improperly placing him in the J-1 security unit. (Doc. no. 57, p. 2; see also doc. no. 57-1, Ex. 1, p. 2.) Grievance 200646 alleged Defendant Timmons was "aware of [his] heat intolerance, and that he was subjecting [him] to conditions of extremely

9

high temperatures and humidity" on July 23, 2015. (Doc. no. 57-1, Ex. 1, pp. 1-2.) However, Plaintiff's allegations in his amended complaint against Defendant Timmons occurred in June 2016, nearly one year after the incident in grievance 200646. (Doc. no. 22, pp. 15-16.) Therefore, because it was filed nearly a year before the allegations in the present case and concerns a different occurrence on a different date, grievance 200646 did not exhaust Plaintiff's claims against Defendant Timmons for improperly placing him in the J-1 security unity and submitting him to extreme temperatures.

### 2. Grievance 208440

Plaintiff filed grievance 208440 alleging Counselor Humphries was not allowing him his OJT barbering hours. As an initial matter, Plaintiff complains of Counselor Humphries removed him from barbering detail, not Defendant Price. Indeed, Defendant Price is not even mentioned in the grievance.

Regardless, even if Plaintiff properly named Defendant Price in this grievance, he failed to complete the grievance process. Plaintiff claims he completed the grievance process because the grievance was resolved internally, which is why he dropped it. (Doc. no. 68, pp. 1-2.) However, the grievance process is not complete until after an inmate receives a response to his grievance appeal or until the time period in which the Commissioner has to respond expires. See SOP IIB05-0001 § VI(E). Because Plaintiff failed to pursue grievance no. 208440 through the appeals level, this grievance is incomplete and cannot serve to exhaust his administrative remedies. Woodford, 548 U.S. at 90-91, 93.

Moreover, by Plaintiff's admission, JSP officials took action and resolved Plaintiff's issue. (Doc. no. 68, pp. 1-2.) Such corrective action relieves Plaintiff's need to litigate this

10

claim. See Porter v. Nussle, 534 U.S. 516, 525 (2002) ("[C]orrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation."). Thus, Plaintiff failed to exhaust his claims against Defendant Price for removing him from barbering detail.

### 3. Grievances 219596, 222517, 223177, and 225673

Plaintiff filed the present lawsuit before receiving a response from the Central Office regarding his appeal of grievances 219596, 222517, 223177, and 225673. (See doc. no. 1; doc. no. 49-5, Attch. 3, pp. 57-98.) The Eleventh Circuit requires prisoners to complete the administrative process before initiating suit. Poole, 312 F. App'x at 166; see also Higginbottom, 223 F.3d at 1261. Therefore, because he filed suit before completing the administrative process, grievances 219596, 222517, 223177, and 225673 fail to exhaust Plaintiff's claims.

Plaintiff concedes the administrative process for grievances 219596, 222517, 223177, and 225673 was not completed until after he filed his original complaint, but contends because he amended his complaint after exhausting his administrative remedies, they still satisfy the PLRA exhaustion requirements. (See, e.g., doc. no. 68, p. 2; doc. no. 70, p. 2; doc. no. 73, pp. 1-2.) However, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith, 491 F. App'x at 83; see also Harris v. Garner, 216 F.3d 970, 981 (11th Cir. 2000). Consequently, Plaintiff's amendment after exhausting claims against additional Defendants does not restart the exhaustion clock. Smith, 491 F. App'x at 83. As the Eleventh Circuit explained:

11

> Because [Plaintiff]'s attempt to amend or supplement his original complaint did not change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint. Therefore, he cannot cure the exhaustion defect. See [Harris, 216 F.3d at 981] (stating that an amended or supplemental complaint could not cure the original defective complaint because "[n]o amendment or supplement to a pleading can change a historical fact."). And although Rule 15(d) permits parties to supplement a pleading even when the original pleading is defective, Rule 15 "does not and cannot override a substantive requirement or restriction contained in a statute (especially a subsequently enacted one)." Id. at 982-83.

Id.

Accordingly, because Plaintiff filed the present lawsuit before the administrative processes for grievances 219596, 222517, 223177, and 225673 were complete, these grievances do not satisfy the exhaustion requirement. Poole, 312 F. App'x at 166; Higginbottom, 223 F.3d at 1261; Smith, 491 F. App'x at 83. Thus, Plaintiff has failed to exhaust his claims against Defendants Pullins and Hall for refusing breathing treatments and falsifying vital information, against all Defendants for refusing to provide him with an electrical cord for his CPAP, and against all Defendants for ignoring his heat intolerance medical profile and exposing him to tobacco, marijuana, and methamphetamine smoke.

### 4. Failure to Grieve Exhaust Fan Claims against Defendant Byrd

Plaintiff concedes he failed to file a grievance regarding his claim Defendant Byrd turned off exhaust fans on the roof, but contends he did not do so because it was a non-grievable issue, citing Deputy Warden Price's rejection of grievance 223177. (Doc. no. 57, p. 3; doc. no. 49-5, Attch. 3, pp. 84-92.) However, a prisoner may file a grievance regarding housing changes where there is an alleged threat to that prisoner's health or safety. See SOP IIB05-0001 § VI(B)(2)(h); (doc. no. 49-5, Attch. 3, pp. 84-92) (failing to allege threat to

Plaintiff's health or safety). Moreover, even if any grievance regarding the exhaust fans would have been rejected as non-grievable, Plaintiff was still required to exhaust his available remedies through the grievance system. See Lofton v. Williams, No. CV415-146, 2016 WL 4147155, at *3 (S.D. Ga. Aug. 3, 2016), report and recommendation adopted sub nom. Lofton v. Wiliams, No. CV415-146, 2016 WL 4500523 (S.D. Ga. Aug. 26, 2016) (holding non-grievability of issue cannot excuse failure to exhaust); Ates v. Terry, No. 5:11-CV-403 CAR, 2012 WL 3096065, at *2 (M.D. Ga. June 29, 2012), report and recommendation adopted, No. 5:11-CV-403 CAR, 2012 WL 3096063 (M.D. Ga. July 30, 2012) (same); Blackerby v. McNeil, No. CV 307-071, 2008 WL 5210351, at *2 (S.D. Ga. Dec. 10, 2008) (same). Accordingly, Plaintiff failed to exhaust his administrative remedies regarding his claim that Defendant Byrd turned off exhaust fans on the roof.

### 5. Failure to Grieve Inhaler Claims against Defendants Hurst, Timmons, and Smith

Plaintiff alleges in his amended complaint that Defendants Hurst, Timmons, and Smith removed and threw away his inhaler. (Doc. no. 22, p. 15.) However, Plaintiff never filed a grievance regarding this issue. (See doc. no. 49-4, Attch. 4.) Accordingly, Plaintiff failed to exhaust his administrative remedies regarding this claim. Turner, 541 at 1082-83.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' partial motions to dismiss (doc. nos. 49, 64) be **GRANTED** and the Court **DISMISS** Plaintiff's claims (1) against Defendant Timmons for improperly placing him in the J-1 security unity and submitting him to extreme temperatures; (2) against Defendant

Price for removing him from barbering detail; (3) against Defendants Pullins and Hall for refusing breathing treatments and falsifying vital information; (4) against all Defendants for refusing to provide him with an electrical cord for his CPAP; (5) against all Defendants for ignoring his heat intolerance medical profile and exposing him to tobacco, marijuana, and methamphetamine smoke; (6) against Defendant Byrd for turning off exhaust fans on the roof; and (7) against Defendants Hurst, Timmons, and Smith for throwing away his inhaler. As no claims remain against them, the Court further **REPORTS** and **RECOMMENDS** Defendants Pullins, Hurst, Timmons, Smith, Clark, Claxton, Rogers, Bryan, Lindsey, and Andrew-Bodi be **DISMISSED** from this case. The only claims left for further litigation are those against Defendants Price and Morris for discontinuance of his assisted living profile, against Defendant O'Neal for confiscating his CPAP container, and against Defendant Byrd for refusing to call Plaintiff to medical for breathing treatment.

    SO REPORTED and RECOMMENDED this 18th day of January, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA