IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

MITCHELL LUDY,                              )
                                           )
            Plaintiff,                     )
                                           )
     v.                                    )          CV 316-065
                                           )
DEANNE MORRIS, Health Service              )
Administrator; CHERIE PRICE, Deputy        )
Warden; WESLEY O'NEAL, Unit Manager;       )
and JESSICA BYRD, Correctional Officer,    )
                                           )
            Defendants.                    )
_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Plaintiff, an inmate at Dooly State Prison in Unadilla, Georgia, is proceeding *pro se* and *in forma pauperis* in this case brought case pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at Johnson State Prison ("JSP") in Wrightsville, Georgia. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED**, (doc. no. 126), Defendants' motion for summary judgment be **GRANTED**, (doc. no. 131), a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

## I.    PROCEDURAL BACKGROUND

Plaintiff originally named the following Defendants: (1) Shawn Emmons, Warden at JSP; (2) DeAnne Morris, Health Services Administrator for the Georgia Regents Health

System ("GRHS"); (3) Cherie Price, Deputy Warden at JSP; (4) Mitzi Hall, Director of Nursing for GRHS; (5) Wesley O'Neal, Unit Manager at JSP; (6) Ms. Byrd, Correctional Officer at JSP; (7) Ms. Pullins, Nurse for GRHS; (8) Jason Hurst, Cert. Officer at JSP; (9) Larry Timmons, Cert. Officer at JSP; (10) Lakeisha Smith, Cert. Officer at JSP; (11) Jamie Clark, Deputy Warden of Administration at JSP; (12) Ms. Claxton, Nurse for GRHS; (13) Ms. Rogers, Nurse for GRHS; (14) Mr. Bryan, Jr., Nurse for GRHS; (15) Annie Bodie; and (16) Pamela Lindsay. (See doc. nos. 22, 39.) On May 1, 2017, United States District Judge Dudley H. Bowen, Jr., dismissed Defendants Emmons and Hall upon the Court's recommendation after screening Plaintiff's amended complaint. (Doc. no. 36.)

On March 5, 2018, Judge Bowen dismissed, for failure to exhaust administrative remedies, all claims against all defendants except claims against (1) Defendants Price and Morris for discontinuance of Plaintiff's assisted living profile and related transfer from a climate-controlled dormitory; (2) Defendant O'Neal for confiscating Plaintiff's CPAP machine container; and (3) Defendant Byrd for refusing to call and escort Plaintiff to medical for breathing treatments. (Id.) Among the claims swept away by the dismissal order were claims against (1) all Defendants for ignoring Plaintiff's alleged heat intolerance medical profile and maintaining an unhealthy air environment polluted by tobacco, marijuana, and methamphetamine smoke; (2) against Defendant Byrd for turning off exhaust fans on the roof.

On December 17, 2018, Plaintiff filed a motion for summary judgment, and on January 7, 2019, Defendants responded to Plaintiff's motion and filed their own motion for summary judgment. (Doc. nos. 126, 131.) Both parties filed a statement of material facts

with their motions. (See doc no. 126, pp. 1-7; doc. no. 131-1.) Therefore, the Court deems admitted all undisputed facts which find support in the record. See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (deeming admitted all unopposed fact statements supported by the evidentiary materials of record). As to the disputed facts, the Court will review each parties' statements of material facts and the evidentiary record "to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1303 (11th Cir. 2009).

## II.    FACTS

### A.    Plaintiff's Assisted Living Profile

On September 29, 2015, Physician Assistant ("PA") Annie Bodi examined Plaintiff for hypertension, gastrointestinal reflux disease, asthma, and hyperlipidemia. (Pl. Medical Docs., doc. no. 131-8, pp. 11, 46.) PA Bodi renewed Plaintiff's assisted living profile and annual prescriptions for QVAR and Xopenex, which are inhalers used to control symptoms of asthma. (Id. at 46; Wood Decl., doc. no. 131-10, ¶ 8.) On October 26, 2015, medical personnel issued Plaintiff profiles for (1) "Detail Restriction: No Chemicals, Fumes, or Dust"; (2) "Heat Intolerance"; (3) "Med.- Assisted Living"; and (4) "Bottom Bunk". (Doc. No. 131-3, pp. 1-3.) Georgia Department of Corrections ("GDC") utilizes profiles, as explained in the Medical Classification and Profiling section of GDC's Standard Operating

Procedure ("SOP"), to determine a prisoner's functional capabilities and limitations. (SOP, doc. no. 131-4, p. 2.)

A profile for "Detail Restriction: No Chemicals, Fumes, or Dust" means the prisoner is restricted from work details with exposure to chemicals, fumes, or dust. (Price Decl., doc. no. 131-2, ¶ 6.) A "Heat Intolerance" profile means a prisoner is restricted from work details with "sun/exposure or heat-related side effects." (SOP, pp. 16-17.) A "Med.- Assisted Living" or simply "assisted living" profile means the prisoner is capable of most self-care activities like eating or grooming, is mobile with occasional human assistance, requires more than fifteen hours of nursing supervision or observation per week, and needs minimal assistance with medication. (Id. at 11.) Lastly, a "Bottom Bunk" profile means the prisoner is incapable of climbing to the top bunk and is most common with inmates who require sleeping aids or a CPAP machine, or suffer from other chronic debilitating orthopedic problems. (Id. at 18.)

When his profiles issued on October 26, 2015, Plaintiff was housed in Building D, a climate-controlled facility housing prisoners requiring special assistance or monitoring. (Price Decl., ¶ 6.) Building D satisfied all of Plaintiff's medical profiles. (See generally doc. nos. 22, 126.) Defendant Cherie Price, JSP Deputy Warden of Care and Treatment, was responsible for optimizing housing arrangements based on prisoner needs and profiles. (Price Decl., ¶ 7.) On October 28, 2015, Deputy Warden Price became aware of Plaintiff's profiles issued two days prior. (Id.) At the time, there was a lack of bottom bunks for prisoners in wheelchairs in Building D. (Id.) As is common when there is a lack of

resources to accommodate all prisoner profiles, Deputy Warden Price asked Physician's Assistant ("PA") Annie Bodi to review Plaintiff's medical information and determine if his assisted living profile was necessary. (Id.) If the profile was necessary, Deputy Warden Price would request Plaintiff's transfer to a prison with open accommodations. (Id. at ¶¶ 11, 16.; see also Transfer SOP, doc. no. 131-6, pp. 4-6.)

Soon thereafter, PA Bodi reviewed Plaintiff's information, determined Plaintiff's assisted living profile was unnecessary, and discontinued it. (Price Decl., ¶ 7; Pl. Medical Docs., p. 45.) PA Bodi continued Plaintiff's heat intolerance and bottom bunk profiles. (Pl. Medical Docs., p. 45.) Upon discontinuation of his assisted living profile, Plaintiff was moved to Building G, which did not meet the assisted living profile standards. (Price Decl., ¶ 9; doc. no. 131-3, p. 4.) Defendant Deanne Morris, Health Service Administrator at JSP, transcribed PA Bodi's order and co-signed it. (Morris Decl., doc. no. 131-7, ¶¶ 2, 5.) Ms. Morris is responsible for administrative, budgetary, and operational planning duties in providing health care to JSP inmates. (Id. at ¶ 2.) She is also a registered nurse who sometimes assists with nursing duties and transcription of orders. (Id.)

Neither Deputy Warden Price nor Ms. Morris has authority to order or cancel a prisoner's profile or accommodations. (Price Decl., ¶ 8; Morris Decl., ¶¶ 6,7.) Only medical providers, such as physicians and physician assistants, have that authority. (Price Decl., ¶ 8.) Deputy Warden Price is not a medical professional and did not dictate the course of Plaintiff's medical treatment. (Id. at ¶¶ 8, 17.) She did not direct PA Bodi to discontinue Plaintiff's assisted living profile and deferred to PA Bodi's judgment when it was

discontinued. (Id. at ¶¶ 8, 11.) Deputy Warden Price was unaware of any health risk posed to Plaintiff by the transfer to Building G. (Id. at ¶ 10.) Ms. Morris also does not dictate a patient's treatment and did not do so in this case. (Morris Decl., ¶ 2.) She only transcribed PA Bodi's order and did not direct PA Bodi to discontinue Plaintiff's assisted living profile. (Id. at ¶ 5.) Ms. Morris was also unaware of Plaintiff's medical conditions, treatment, or any threat posed to him by the transfer to Building G. (Id. at ¶ 10.)

On November 2, 2015, Plaintiff wrote Ms. Morris and former Defendant Mitzi Hall, asking why they allowed his assisted living profile to be discontinued given his medical condition and stating his opinion Building D was a reasonable accommodation for his conditions. (Doc. no. 126-30.) Ms. Morris responded by stating Plaintiff had a heat intolerance profile and should let medical know if he was having any breathing issues. (Id.) On March 20, 2016, Plaintiff also wrote Deputy Warden Price to complain about his transfer to Building G and the heat at night when officers turned off the exhaust fans. (Doc. no. 131-5.) Deputy Warden Price responded by stating Building D bottom bunks are reserved for prisoners in wheelchairs, they removed prisoners not in wheelchairs, and there was nothing she could do to change his profile. (Id.)

On June 2, 2016, Plaintiff wrote Ms. Morris to complain about secondhand smoke in Building G. (Doc. no. 131-9, p. 2.) He asked why a doctor did not evaluate him before discontinuation of his assisted living profile and demanded to see a "private free world doctor." (Id.) Ms. Morris replied that Plaintiff refused medical treatment on June 2, 2016. (Id.) On June 6, 2016, Plaintiff again wrote Ms. Morris asking why he was not assessed after

his profile was discontinued and stating he refused medical treatment because Ms. Morris and her staff were "playing Russian roulette with his life." (Id. at 1.) Ms. Morris responded by telling Plaintiff he was properly assessed as his condition warranted, neither she nor Nurse Pullins, a former Defendant, discontinued his profile, and advanced level providers would continue to make all medical judgments. (Id.)

Plaintiff alleges Defendants Price and Morris discontinued his assisted living profile, and the resulting transfer to Building G exacerbated his asthma because of extreme exposure to smoke from tobacco, methamphetamines, and marijuana. (Doc. no. 22, pp. 11-12; Pl.'s Motion for Summary Judgment ("MSJ"), doc. no. 126, p. 2.) Tobacco, methamphetamines, and marijuana are strictly banned in all GDC facilities, including JSP. (Price Decl., ¶ 14.) Deputy Warden Price avers she was unaware of prevalent tobacco, methamphetamine, or marijuana use in any building at JSP, and had she been aware, she would have confiscated the contraband. (Id.)

By affidavit, Plaintiff alleges he told Defendants Price and Morris about the secondhand smoke in Building G. (Doc. no. 139, p. 5.) Jonathan Cann, Plaintiff's cellmate in Building G, declared he smoked five to six packs of tobacco and two grams of marijuana and methamphetamine per week in his cell. (Cann Decl., doc. no. 126-8.) He further states it is common knowledge that prison officials bring tobacco, methamphetamines, and marijuana into the prison. (Id.) Additionally, multiple inmates at JSP declared JSP's exhaust fans do not work properly, the fans cut off during the night, there is a large amount of pollen, secondhand smoke is common, and there is an insect and mouse infestation. (Doc. nos. 126-

13 – 126-16; doc. no. 126-20.)

### B. Confiscation of CPAP Container

On November 19, 2015, Defendant Wesley O'Neal, Unit Manager at JSP, and Warden Shawn Emmons inspected Plaintiff's cell. (O'Neal Decl., doc. no. 131-11, ¶ 5.) Unit Manager O'Neal noticed a clear plastic container that appeared to be a food storage container. (Id.) Inside the container was a CPAP machine and a surge protector. (Id.) Plaintiff uses a CPAP machine while he is sleeping to facilitate his breathing and stores his CPAP machine in the container when not in use. (Doc. no. 22; O'Neal Decl., ¶ 5.) Unit Manager O'Neal showed the container and surge protector to Warden Emmons, and Warden Emmons decided the container was contraband and directed Unit Manager O'Neal to confiscate it. (Id.)

On December 8, 2015, Unit Manager O'Neal notified Plaintiff his CPAP container was deemed contraband pursuant to GDC SOP IIB06-0002 concerning "Management of Offender Property or Contraband" because it was a security issue due to its capability of storing other contraband. (Id. at ¶¶ 6, 10; see doc. no. 131-12.[1]) Because the container was deemed contraband, Plaintiff had the option to mail the item out of JSP for safekeeping or arrange for the item to be picked up. (O'Neal Decl., ¶ 10; doc. no. 131-3, p. 5.) Mr. O'Neal also instructed Plaintiff he had seven days to prove the container was obtained through proper channels or proof of purchase. (Doc. no. 131-3, p. 5.) While Plaintiff alleges in this

---

[1]Defendants provide a copy of GDC's SOP concerning "Management of Offender Property or Contraband" for December 31, 2015, rather than the operative policy for November 19, 2015. However, Unit Manager O'Neal declares the definition of "contraband" did not significantly change between these two policies. (O'Neal Decl., ¶ 6, n.1.)

civil action Dooly State Medical Prison issued him the container, he did not provide any medical documentation, proof of purchase, or other means to show he obtained the container through proper channels within the seven days established by Mr. O'Neal or any time thereafter. (O'Neal Decl., ¶ 10.) He also did not arrange for the container to be mailed out even though he completed a form indicating his intention to mail the container. (O'Neal Decl., ¶ 10; doc. no. 131-3, p. 5.) Plaintiff's container was destroyed one year later on December 15, 2016. (O'Neal Decl., ¶ 10; doc. no. 131-3, p. 5.)

Plaintiff alleges confiscation of his CPAP container exacerbated his asthma because his CPAP machine was not protected from dust, pollen, smoke, and other contaminants. (Doc. no. 22, p. 13; doc. no. 126, pp. 4, 6.) Andrew Davis, inmate at JSP, declared he observed a considerable amount of pollen on the top and bottom bunks in Plaintiff's cell, and he observed and swiped a thick layer of pollen off Plaintiff's CPAP machine after Unit Manager O'Neal confiscated the container. (Davis Decl., doc. no. 126-17.)

Unit Manager O'Neal is not a medical provider and was unaware of any profile stating Plaintiff was required to have the container. (O'Neal Decl., ¶ 8.) Unit Manager O'Neal was not aware of any medical department that issued the container to Plaintiff, and he was aware the container was not available through the commissary. (Id. at ¶ 5.)

### C.    May 13, 2016 Breathing Treatment

On April 28, 2016, Nurse Practitioner ("NP") Purdey examined Plaintiff and prescribed Claritin and nebulizer treatments for seven days. (Pl. Medical Docs., p. 6.) The nebulizer treatments were necessary because Plaintiff had been fasting and failed to take his

asthma medications. (Id.) From May 2, 2016, to May 4, 2016, Plaintiff received nebulizer breathing treatments to treat his asthma in addition to his inhaler prescription. (Id. at 5.) On May 11, 2016, Dr. Seward and a nurse examined Plaintiff, and Dr. Seward ordered daily nebulizer treatments. (Id. at 43.) According to Dr. Mark Wood, a physician at Autry State Prison ("ASP"), Plaintiff's nebulizer treatments administer the same medication as Plaintiff's prescription inhalers, with the only difference being the method of delivery. Both a nebulizer and an inhaler are equally effective in treating asthma, and nebulizer treatments are not more powerful than inhalers. (Wood Decl., ¶ 15.) However, a nebulizer is the preferred method when a patient does not properly use or is noncompliant in using the inhaler. (Id.)

Plaintiff alleges Officer Byrd refused to call medical personnel to request an immediate nebulizer treatment for Plaintiff on May 13, 2016. Mr. Griffin, a fellow JSP inmate, declared he witnessed Plaintiff ask Officer Byrd if she would call about Plaintiff's nebulizer treatment, which Officer Byrd refused and continued to talk on the phone. (Griffin Decl., doc. no. 126-5.) He further declares Plaintiff was "breathing very loudly and possibly needed his breathing treatment." (Id.) Plaintiff alleges Officer Byrd was aware of his condition because he was breathing loudly and constantly using his inhaler. (Doc. no. 139, p. 4.)

While Defendants claim the medical department did not call for Plaintiff to receive his nebulizer treatment, and Plaintiff did not complain to Officer Byrd about any breathing problems or breathing treatment, (Price Decl., ¶ 20), they do so citing Deputy Warden Price's declaration that repeats an unsworn statement of Officer Byrd. (Id.; see doc. no. 49,

p. 55.)  Deputy Warden Price further declared when medical providers must provide treatments, like Plaintiff's nebulizer treatment, a member of the medical staff calls for the inmate to be transported to medical, or if an inmate requests treatment, an officer could contact their supervisor for permission to transport the prisoner.  (Price Decl., ¶ 19.)  After Officer Byrd's shift ended, it is undisputed Plaintiff complained to the relieving officer, Erica Glover, and she arranged for Plaintiff's transport to medical for nebulizer treatment.  (See doc. no. 22, p. 14; doc. no. 131-1, p. 12.)

## III.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party."  United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its

burden of proof at trial. <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970) and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Id.</u> at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Federal Rule Civil Procedure 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (quoting <u>Adickes</u>, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> at 248.

**B. Defendants are Entitled to Summary Judgment on All Three Claims Alleging Deliberate Indifference to Plaintiff's Asthma**

**1. Deliberate Indifference Standard**

To prevail on a claim for deliberate indifference to a serious medical need, Plaintiff must prove that: (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1326 (11th Cir. 2007); <u>see also</u> <u>Thomas v. Bryant</u>, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010).

12

To satisfy the objective component, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). To satisfy the subjective component, Plaintiff must allege that a defendant (1) was subjectively aware of a serious risk of harm and (2) disregarded that risk (3) by following a course of action which constituted more than mere negligence. Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353,

1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

The Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference. See Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010). Furthermore, the Court should not second-guess medical judgments. Wallace v. Sheriff, 518 F. App'x 621, 622-23 (11th Cir. 2013); Smith, 375 F. App'x at 910 ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment.").

## 2. Assisted Living Profile

Plaintiff alleges Defendants Price and Morris were deliberately indifferent to his asthma by discontinuing his assisted living profile, which caused him to be moved from Building D to Building G. (Doc. no. 22; doc. no. 126, pp. 2-9.) Plaintiff alleges the move to Building G exacerbated his asthma because of the unreasonable levels of secondhand smoke from tobacco, marijuana, and methamphetamines, and Defendants Price and Morris knew such a move would exacerbate his asthma. (Doc. no. 22, p. 11; doc. no. 126, pp. 2-9.) Defendants Price and Morrie argue (1) Plaintiff's asthma did not constitute a serious medical need, nor did he have a serious medical need for an assisted living profile; (2) they did not discontinue Plaintiff's medical profile; and (3) there is no admissible evidence Plaintiff suffered any proximate injuries. (Doc. no. 131-13, pp. 12-18.) Summary judgment is proper

for the second and third reason identified by Defendant, and also because of the significant overlap between the present claim and one already dismissed by the Court.

At the heart of Plaintiff's claim against Defendants Price and Morris is the assertion Building G is inhospitable for asthmatic inmates because of the uncomfortably warm room temperature and poor air quality caused by secondhand smoke from inmates using tobacco, marijuana, and methamphetamine.  (See doc. no. 22, pp. 11-12.)  Indeed, without this underlying premise, there is no claim Plaintiff suffered injury because of his transfer from Building D to Building G.  The problem for Plaintiff, however, is the Court's dismissal, for failure to exhaust remedies, of Plaintiffs' claims against all Defendants concerning these very same allegations, i.e. the air in Building D is too hot and polluted with secondhand smoke from tobacco, marijuana, and methamphetamine.  (See doc. no. 94.)  As a threshold matter, therefore, Plaintiff's transfer claims against Defendants Price and Morris fail because Plaintiff is barred from asserting claims arising out of his complaints about the heat and air quality in Building G.

Even if Plaintiff were not barred from asserting the present claim, it fails for two reasons identified by the defense.  First, assuming there is a serious medical need, no reasonable juror could find Defendants Price and Morris discontinued Plaintiff's assisted living profile.  Instead, it is undisputed Deputy Warden Price merely asked a medical professional whether Plaintiff's assisted living profile was truly necessary because of a pressing problem of not having sufficient bottom bunk space in Building D for inmates in wheelchairs.  PA Bodi, who is not a defendant, reviewed Plaintiff's information and decided

to discontinue Plaintiff's assisted living profile. Ms. Morris only transcribed PA Bodi's order. (Price Decl., ¶¶ 7-9; Morris Decl., ¶ 5.) Ms. Morris was not familiar with Plaintiff's medical care, did not direct PA Bodi to discontinue Plaintiff's profile, and did not have any authority to change Plaintiff's assisted living profile. (Id.) Deputy Warden Price merely transferred Plaintiff to Building G to free up space for more pressing needs of inmates in wheelchairs after PA Bodi removed the profile that necessitated Plaintiff's assignment to Building D.

Second, there is no evidence Plaintiff suffered any physical injury because of his transfer to Building G. Plaintiff generally claims the transfer exacerbated the symptoms of his asthma. (Doc. nos. 22, 126, 136-139.) Of course, Plaintiff is unqualified, as a layperson with no medical training, to testify the transfer to Building G caused any exacerbation of his asthma, and even if he was qualified to render such an opinion, it would establish mere discomfort, at most, and there is no evidence of physical harm. See Cassady v. Walker, CV 109-128, 2012 WL 899913, at *12-14 (S.D. Ga. Feb. 6, 2012) (holding prisoner plaintiff self-described severe asthma attack did not rise to Eighth Amendment violation where no medical evidence showed harm from delay in breathing treatments), *adopted by* 2012 WL 899200 (S.D. Ga. Mar. 15, 2012), *vacated and remanded on other grounds by* 519 F. App'x 677 (11th Cir. 2013).

Plaintiff's arguments against summary judgment are not convincing. Plaintiff argues Defendants Price and Morris ordered PA Bodi to discontinue Plaintiff's assisted living profile. (Doc. no. 126, p. 2; doc. no. 136, pp. 2-3.) Defendants Price and Morris declare they

did not. (Price Decl., ¶ 8; Morris Decl., ¶ 5.) Plaintiff provides no basis for his disagreement aside from conjecture, which is wholly insufficient at summary judgment. See Fed. R. Civ. P. 56(c)(4) and (e) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, . . . and show that the affiant or declarant is competent to testify on the matters stated."); Hill v. Oil Dri Corp. of Ga., 198 F. App'x 852, 858 (11th Cir. 2006) (holding affidavits which were too conclusory and lacking specific facts did not create genuine dispute of material fact). The mere fact Ms. Morris signed the order along with PA Bodi does not create a genuine issue of material fact in light of her undisputed testimony she merely transcribed PA Bodi's order, she did not order discontinuation of the profile, and she had no authority to order discontinuation of any profile.

Plaintiff also argues Defendants Price and Morris violated GDC policy by not transferring Plaintiff to another prison to accommodate his medical needs. (Doc. no. 126, p. 3; doc. no. 136, pp. 4-6.) His medical needs, however, are established by medical professionals, and it is undisputed PA Bodi determined Plaintiff did not need an assisted living profile such that a transfer to Building G did not constitute a refusal to accommodate Plaintiff's established medical needs.

Plaintiff attempts to use the affidavit of Jason Darius Mobuary to show Deputy Warden Price does have control over prisoner profiles and transfers. (Doc. no. 126, p. 3; doc. no. 136, pp. 4-6.) However, Mr. Mobuary's affidavit is inadmissible hearsay because it recounts a conversation overheard by Mr. Mobuary between two individuals unrelated to this case. Fed. R. Evid. 801-804; see Fed. R. Civ. P. 56(c)(4) (requiring facts in affidavits to be

admissible at trial).  Additionally, even if considered, Mr. Mobuary's affidavit would not help Plaintiff because at most it shows Deputy Warden Price would accommodate a prisoner who has the proper medical profile, but it is undisputed Plaintiff did not have an assisted living profile when transferred to Building G.

Third, Plaintiff argues Defendants Price and Morris knew about the alleged secondhand smoke problem in Building G and should have realized he would suffer harm from a transfer there.  (Doc. no. 126, pp. 3-5; doc. no. 136, pp. 6-9.)  The allegation runs headlong into Plaintiff's problem that he is barred, because of failing to exhaust administrative claims, from asserting any claim against any defendant concerning the air qualify and alleged secondhand smoke problem in Building G.  Accordingly, Plaintiff's attempts to prove poor air quality throughout the prison are unavailing.  (Cann Decl.; Davis Decl.; doc. nos. 126-13 – 126-16; 126-20).

In addition, even assuming there was a secondhand smoke problem and this problem was known to Defendants Price and Morris, they were entitled to rely on PA Bodi's medical judgment that no medical condition of Plaintiff precluded his transfer into Building G.  See Rutledge v. Lift, CV 307-055, 2009 WL 2842739, at *8 (S.D. Ga. July 22, 2009) (citing Waldrop v. Evans, 681 F. Supp. 840, 848-49 (M.D. Ga. 1988)), *adopted by* 2009 WL 2900276 (S.D. Ga. Sept. 3, 2009) (Bowen, J.) (holding prison officials who are not medical professionals must rely on practitioners regarding care provided to inmates).

Fourth, Plaintiff argues Deputy Warden Price moved him to Building G despite his heat tolerance profile.  (Doc. no. 126, pp. 5-6.)  However, a heat tolerance profile does not

require an inmate's housing in in a climate-controlled building but instead only prohibits assignment to work details involving exposure to excessive heat. (SOP, pp. 16-17.) Furthermore, this argument runs headlong into Plaintiff's problem that he is barred, because of failure to exhaust administrative remedies, from bringing any claim alleging the air temperature in Building G was excessively hot.

For all of these reasons, Defendants Price and Morris are entitled to summary judgment on Plaintiff's claim for deliberate indifference to a serious medical need. Plaintiff's motion for summary judgment should be denied for the same reasons.

### 3.    CPAP Container

Plaintiff alleges, on November 19, 2015, Unit Manager O'Neal was deliberately indifferent to his asthma by confiscating his CPAP storage container and not providing an alternative for Plaintiff to store the device, which led to exacerbation of Plaintiff's asthma. (Doc. no. 22, p. 13.) Defendants argue (1) Plaintiff may have had a serious medical need for the CPAP machine but not the container itself; (2) Unit Manager O'Neal confiscated the container as contraband pursuant to Warden Emmon's direct order, and Plaintiff never took the steps to document his need for the container and regain possession of it; and (3) Plaintiff suffered no physical harm from losing possession of the container. Summary judgment is appropriate for all three reasons.

First, while reasonable jurors might find Plaintiff had a serious medical need for a CPAP machine, no reasonable juror could find Plaintiff had a serious medical need for the container itself, which appears from Plaintiff's filings to serve no purpose other than a dust

cover.  To the extent Plaintiff contends the air quality in Building G was so poor from secondhand smoke and other contaminants he needed a container to protect his CPAP machine, the contention runs headlong into the bar of him asserting the air quality claim in the first instance, and there is no evidence Plaintiff could not have addressed the issue by simply cleaning his CPAP machine on a regular basis.

To satisfy the objective component, a prisoner must allege his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).  There is no evidence of a physician mandating the container itself, and the criticality of the container to the CPAP machine's functionality, as alleged by Plaintiff, is not so obvious that even a lay person would easily recognize it.  Indeed, Unit Manager O'Neal declares he was not aware of any medical necessity for the container itself.  (O'Neal Decl., ¶ 8.)

Even if Plaintiff did have a serious medical need for the CPAP container, the undisputed evidence shows Unit Manager O'Neal confiscated Plaintiff's container as contraband at the direction of Warden Emmons, and Warden Emmons is not a defendant.  (Id. at ¶ 5.)  Furthermore, even though Unit Manager O'Neal gave Plaintiff seven days to prove he obtained the container through proper channels, Plaintiff did not bother to present any evidence of how he retained the container or why it was medically necessary.  (Doc. no. 131-3, p. 5.)  There can be no deliberate indifference when Plaintiff has failed to take the steps outlined by officers to prove existence of the medical need in the first instance.

Finally, there is no admissible evidence to establish the absence of a CPAP container caused Plaintiff to suffer any injuries. As a layperson, Plaintiff cannot offer admissible expert testimony establishing in what ways the absence of a container has adversely affected performance of the CPAP machine or infected it in such a way that it exacerbated his asthma. Nor has he suggested, much less proven, he suffered physical injury causally related to the container's absence. For these reasons, Defendants' motion summary judgment as to Unit Manager O'Neal should be granted and Plaintiff's motion be denied.

Notably, Plaintiff argues Unit Manager O'Neal retaliated when Plaintiff filed a grievance to retrieve the container. (Doc. no. 126, p. 6.) However, Plaintiff never alleged this claim in his complaint. (See doc. no. 22.) Plaintiff may not amend his complaint to raise new claims at the summary judgment stage. Fed. R. Civ. P. 15; Linares v. Broward Cty. Sheriff's Office, 347 F. App'x 424, 428 (11th Cir. 2009); Glimour v. Gates, McDonald and Co., 382 F.3d 1312, 1314 (11th Cir. 2004).

### 4. Nebulizer Treatment

Plaintiff alleges, on May 13, 2016, he was experiencing an asthma attack, and Officer Byrd was deliberately indifferent when he refused to call medical and arrange for transport to the medical unit for an immediate nebulizer breathing treatment. (Doc. no. 22, p. 14.) Defendants argue Plaintiff did not inform Officer Byrd of any difficulty breathing, any failure by Officer Byrd constitutes negligence at most, not deliberate indifference, and Plaintiff suffered no harm from any delay in receiving the nebulizer treatment. Even assuming Plaintiff was in acute distress, as he claims, and Officer Byrd failed to act, there is

no evidence Plaintiff suffered any injury as a result of the delay in the nebulizer treatment. (Doc. no. 131-13, pp. 12-14, 19-20.)

Deliberate indifference claims alleging a constitutional violation from a delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d 1188; Owen v. Corizon Health Inc., 703 F. App'x 844, 847 (11th Cir. 2017). It is undisputed Plaintiff received his nebulizer treatment on May 13, 2016, after Officer Byrd's shift ended. (See doc. no. 22, p. 14; doc. no. 131-1, p. 12.) At most, Plaintiff alleges his asthma attack was unnecessarily prolonged because of the delay, and the medical record contains no evidence of any physical harm resulting from the delay. Indeed, during a medical appointment with PA Bodi four days later, on May 17, 2016, Plaintiff did not mention anything about his asthma or his condition worsening, and on May 23, 2016, PA Bodi discontinued nebulizer treatments because Plaintiff's lungs were clear and he was not wheezing. (Pl. Medical Docs., pp. 2, 43; Wood Decl., ¶¶ 19, 20.)

Thus, there is no evidence supporting Plaintiff's allegations, and no medical documentation shows Plaintiff suffered any detrimental effect from this delay. "Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment." Howard v. Memnon, 572 F. App'x 692, 695 (11th Cir. 2014) (per curiam) (citing Bennett v. Parker, 898 F.2d 1530, 1532-34 (11th Cir. 1990)). Plaintiff fails to show any medical evidence of harm from the delay and fails to show any causation or correlation between the May 13th delay in

22

treatment, his alleged severe or acute asthma, and any alleged worsened condition. See Cassady, 2012 WL 899913, at *12-14 (holding prisoner plaintiff self-described severe asthma attack did not rise to Eighth Amendment violation where no medical evidence showed harm from delay in breathing treatments).

Furthermore, Plaintiff admits he was prescribed an emergency inhaler for asthmatic flare-ups and was using it on May 13 when he asked Officer Byrd to call the medical department. The fact Plaintiff was not satisfied with the course of treatment provided by his inhaler does not give rise to an Eight Amendment violation. See Smith, 375 F. App'x at 910 (difference of opinion over a diagnosis or course of treatment does not support claim of deliberate indifference); Cassady, 2012 WL 899913, at *12-14 (holding prisoner plaintiff's access to inhaler as requested and not breathing treatments amounted to nothing more than dissatisfaction with course of treatment and did not give rise to Eighth Amendment claim.) Therefore, Officer Byrd should be granted summary judgement, and Plaintiff's motion should be denied for the same reasons.

### 5. Nine of the Affidavits Filed by Plaintiff Are Fatally Deficient and, Even if Considered, Do Not Change the Outcome

Plaintiff filed numerous affidavits by himself and multiple different inmates. (Doc. nos. 126-5 – 126-9; 126-11 – 126-22; 139, pp. 4-7.) However, many of these affidavits are either irrelevant, not properly sworn, or do not meet the requirements of Federal Rule of Civil Procedure 56. First, two affidavits by Plaintiff are irrelevant because they do not involve either the Defendants or the events of this case. (See doc. nos. 126-18, 126-19.) In these two affidavits, Plaintiff described pressing an emergency help button on two different

occasions because he was having an asthma attack, but the emergency signal was silenced by Officer Webb first and Officer Wicker on the second occasion. (Doc. nos. 126-18, 126-19.) Officer Webb silenced the signal because she could not tell where the signal was coming from. (Doc no. 126-18.) Officer Wicker called his supervisor for medical when he was told about the signal, but medical never came. (Doc. no. 126-19.) These events are irrelevant to Plaintiff's claims because Defendants are not involved, it occurred a month after the latest incident in this case, and has no bearing on the merits of Plaintiff's claims.

Second, three statement submitted by Plaintiff do not meet the requirements under 28 U.S.C. § 1746. (See doc. nos. 126-9, 126-11, 126-12.) "Unsworn statements do not meet the requirements of Rule 56." Dudley v. City of Monroeville, 446 F. App'x 204, 207 (11th Cir. 2011) (citing Carr v. Tatangelo, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003)). However, under § 1746, an unsworn written statement is allowed so long as it contains "a handwritten averment, signed and dated, that the statement is true under the penalties of perjury." McCaskill v. Ray, 279 F. App'x 913, 914-15 (11th Cir. 2008) (citing 28 U.S.C. § 1746). Plaintiff submitted a statement from an unknown declarant that does not include any signature or date and is unsworn. (Doc. no. 126-9.) Likewise, Willie Gant's statement does not include a date with his signature. (Doc. no. 126-12.) Therefore, these statements are invalid. 28 U.S.C. § 1746. The second statement from Jonathan Cann is likewise deficient because it does not include any averment substantially similar to the one required by § 1746. McCaskill, 279 F. App'x at 915 (refusing to consider unsworn declaration not including averment it was made under penalty of perjury on summary judgment).

Additionally, even if considered, none of these statements have any bearing on the case. Johnathan Cann's second statement discusses the alleged silencing of the emergency button by an unknown guard and prison officials not turning on the exhaust fans. (Doc. no. 126-11.) The unknown declarant refers to breathing treatments and difficulty breathing, but does not refer to any Defendant or adequately describe events relevant to this case. (Doc. no. 126-9.) Willie Gant states confiscation of the CPAP container was pursuant to a security policy and dust and insects contaminate the CPAP machines. These facts do not change the Court's analysis of the claim against Unit Manager O'Neal and, if anything, confirms confiscation of the container was consistent with policy.

Lastly, affidavits by Plaintiff, Dequarrius Johnson, and Aaron Seibold are deficient because they include hearsay and inadmissible opinions of a lay witness. (Doc. nos. 126-6, 126-15, 126-16.) Federal Rule of Civil Procedure 56 requires affidavits used to oppose motions for summary judgment "set out facts that would be admissible in evidence." Fed R. Civ. P. 56(c)(4). Plaintiff's affidavit is based entirely on inadmissible hearsay because it recounts a conversation between Vincent Turner and Sergeant Lawrence about Deputy Warden Price's authority to transfer inmates to other facilities to accommodate their climate control medical profile. Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 802. Even if admissible, as discussed in § II.A.1., it does not change the outcome because Plaintiff's assisted living profile was discontinued and there was no need to consider transferring Plaintiff.

The affidavits by Dequarrius Johnson and Aaron Seibold are inadmissible as lay opinions because they opine Plaintiff should be in a climate-controlled dorm because of the

exposure to ETS, dust, pollen, insects, rats, and other contaminants, and a cover should always be on the CPAP machine because of the same contaminants. (Doc. nos. 126-15; 126-16.) Dequarrius Johnson and Aaron Seibold are not qualified to offer such expert medical opinions, and, therefore, their opinions are inadmissible. Fed. R. Civ. P. 56(c)(4); <u>see</u> Fed. R. Evid. 701 (limiting lay witness opinion testimony to only if based on their perception, is helpful to trier of fact, and "not based on scientific, technical, or other specialized knowledge").

## IV.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED**, (doc. no. 126), Defendants' motion for summary judgment be **GRANTED**, (doc. no. 131), a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 9th day of July, 2019, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA